# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DENNIS DAMPEER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.10 C 6042** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Morton Denlow** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Dennis Dampeer ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB"). Claimant raises the following issues: (1) whether the ALJ properly considered the opinions of Claimant's treating physician; (2) whether the ALJ properly assessed Claimant's credibility; and (3) whether the ALJ properly assessed Claimant's residual functional capacity. For the following reasons, the Court denies Claimant's motion for summary judgment and grants the Commissioner's motion to affirm the Commissioner's decision.

# I. BACKGROUND FACTS

## A.     Procedural History

Claimant initially filed for DIB on June 12, 2007, alleging a disability onset date of May 7, 2007.  R. 114-23.  The Social Security Administration ("SSA") denied his application on October 2, 2007.  R. 68-71.  Claimant then filed a request for reconsideration, which the SSA denied on December 5, 2007.  R. 65.  Thereafter, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  R. 73-74.

On December 2, 2009, ALJ Karen Sayon presided over a hearing at which Claimant appeared with his attorney, Andrew Marzelle.  R. 26-63.  In addition to Claimant, Lee Knutson, a vocational expert ("VE"), testified at the hearing.  R. 55-60.  On April 23, 2010, the ALJ rendered a decision finding Claimant "not disabled" under the Social Security Act. R. 7-25.  Specifically, the ALJ found Claimant has "the residual functional capacity to perform sedentary work" and is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. 14, 21.

Claimant then filed for a review of the ALJ's decision to the Appeals Council.  R. 5. On July 29, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  R. 1-4.  Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

**B.      Hearing Testimony - December 2, 2009**

**1.      Dennis Dampeer - Claimant**

At the time of the hearing, Claimant was forty-six years old, married, and living with his wife, sister, and brother-in-law. R. 34. Claimant completed education through the tenth grade. R. 57. Claimant's most recent employment as a factory baker and top-mixer ended in May 2007 when he stopped working after his second heart attack. R. 41. At that time, he was also employed as a presser at a cleaners. R. 52. Claimant's prior work experience also included work as a forklift driver and banquet setup supervisor. R. 37. He did not file for worker's compensation or unemployment benefits after leaving his last job and has not applied for any jobs since his claim. R. 36. His current source of income is an $834 per month pension. *Id.*

Claimant testified that he was most recently hospitalized in June 2007. R. 41. Since that time he has had "shortness of breath and drowsiness sometimes and weakness." *Id.* He experiences shortness of breath only when he is doing activities such as climbing and walking, but not when he is sitting down. *Id.* Claimant has been diagnosed with sleep apnea and has been using a mask that lets him sleep through the night. R. 47. Shortness of breath, weakness, and drowsiness are the only conditions that Claimant identified as his barrier to working. R. 48.

Claimant testified that he lives on the second floor of a three floor building. R. 34. During a typical day, Claimant wakes up, washes himself, gets dressed, and stays in the house. R. 48-49. During the day he reads and watches tv; he needs to take naps but could

not say how often.  R. 50.  He can wash dishes and make his bed, but can  no longer do laundry, work on cars, attend his children's activities, or shop.  R. 49-50.  He leaves the apartment several times each week to attend doctor appointments.  R. 34.  While he said he has no problems driving, he is unable to do so because his license is suspended due to unpaid child support.  R. 35.

At the hearing, Claimant testified that he is 5'11" and weighs 274 pounds which is more than he weighed at the time of his heart attack.  R. 35.  During the ALJ's questioning, Claimant testified that he cannot lift more than eight to ten pounds.  R. 48.  He has no problems sitting and can stand for thirty minutes before needing to sit.  *Id.*  When asked by the ALJ whether he could work full-time at a job where he would mostly be sitting and would not lift more than 10 pounds—a sedentary job—Claimant answered "Yes."  R. 51.  He explained that he would need new glasses.  *Id.*

When questioned by his lawyer, Claimant stated the heaviest thing he lifts is a bottle of water.  R. 53.  He further explained that he can lift eight to ten pounds before becoming short of breath and that he could carry ten pounds to his car if he stops on his way there.  *Id.*  He takes nitroglycerin pills for a heart flutter.  R. 54.

## 2.    Lee Knutson - Vocational Expert ("VE")

Lee Knutson testified as a VE.  R. 55.  The VE described Claimant's previous work as a mixer and machine operator at the bakery, which he categorized as light and skilled work, performed at the medium level.  R. 56.  The VE described Claimant's work as a banquet supervisor as light and skilled, his work as a presser as medium and semi-skilled, and his work as a forklift operator as heavy and semi-skilled.  *Id.*

The ALJ posed two hypotheticals to the VE, one which was limited only to light work and then one that was limited to sedentary work.[1]  R. 57-58.  The ALJ ultimately adopted the VE's testimony regarding a person limited to sedentary work, the more restrictive of the two. R.  20.  The ALJ described sedentary work as "work that's primarily done seated lifting no more than 10 pounds occasionally, lesser weights more frequently." R. 58.  The hypothetical person was of the Claimant's education and work history with the following additional limitations: no climbing ladders, ropes or scaffolding; no exposure to heights or hazards and no climbing of ramps or stairs; and no concentrated exposure to respiratory irritants. *Id.*  The VE testified that the hypothetical person could perform the work of a bench assembler (3300), order clerk (2900), and unskilled security personnel and surveillance system monitor (2200).  *Id.*  Finally, the VE testified that an individual needs to be on task at least eighty-five to ninety percent of the time to maintain employment.  R. 59.

---

[1]Sedentary work involves lifting no more than ten pounds at a time.  It involves sitting with a certain amount of walking and standing that is often necessary in carrying out job duties. 20 C.F.R. § 404.1567(a).  Light work, by contrast, involves lifting no more than twenty pounds with frequent lifting or carrying of objects that weigh up to ten pounds.  It also involves a "good deal of walking or standing, or. . .sitting most of the time with some pushing and pulling or arm or leg controls.  20 C.F.R. § 404.1567(b).

**C.     Medical Evidence**

**1.     Dr. Jamal E. Daki - LaGrange Hospital**

Claimant's medical records begin on December 10, 2004 when he was admitted to LaGrange Hospital after visiting the emergency room with chest pain.  R. 221.  Doctors diagnosed Claimant with a heart attack.  *Id.*  He underwent an emergency angioplasty to open his blood vessels.  R. 214.  Claimant also had two stents placed in his blood vessels.  *Id.*  Dr. Daki's notes indicate that the procedures had good results and Claimant's condition was much improved.  R. 214, 221.  Claimant was discharged on December 13, 2005, with prescriptions for Coreg, Lipitor, Plavix, and Vasotec.  R. 212.

Claimant visited LaGrange Hospital and Dr. Daki again on May 16, 2005, with complaints of chest pains.  R. 217.  The chest discomfort was resolved and heparin and aspirin were prescribed, along with the Vasotec, Norvasc, and Plavix he was already taking.  R. 215.  Dr. Daki also noted that Claimant continued to smoke and that he was not taking the Plavix as prescribed—skipping doses "two to three days in a row and as long as a week." R. 214.

**2.     Dr. Yogesh Tejpal & Dr. Philip Alexander - St. Francis Hospital**

Claimant went to the St. Francis Hospital emergency room on December 31, 2005, with chest pain.  R. 231, 233.  Claimant was discharged the same day with instructions to rest, limit activity, cease smoking marijuana, and visit Dr. Tejpal in two to three days.  R. 238.

Claimant was admitted to the St. Francis Hospital emergency room again on April 17,

2006. R. 248. Claimant complained of shortness of breath, heartburn like sensations, weakness, dizziness, and nausea. R. 251. The final diagnosis was chest pain and Claimant was told to take Tylenol or Advil for the pain and to followup with his private doctor in the morning. R. 257. Claimant was cleared to return to work. *Id.*

On May 8, 2007, the day after the alleged onset date, Claimant saw Dr. Tejpal at St. Francis Hospital for an elective cardiac angiogram secondary to symptoms of sharp chest pains. R. 280. The angiogram was performed after Claimant had a markedly abnormal stress test. *Id.* The angiogram showed "instant restenosis, given the proximity of the lesion."[2] R. 281. Claimant was also diagnosed with obstructive coronary disease. R. 284. After a consultation with Dr. Alexander, Claimant elected to have robot assisted single-vessel bypass surgery at Riverside Medical Center. R. 282.

### 3. Bypass Surgery

On June 4, 2007, the day before his scheduled bypass surgery, Claimant was admitted to Advocate Christ Hospital after he felt shaky and had a heaviness in his chest while driving. R. 321. He also complained of bilateral numbness and trembling. R. 319. Claimant left the ER against medical advice and subsequently underwent coronary artery bypass surgery at Riverside Medical Center on June 5, 2007. R. 331. The surgery was successful and Claimant was discharged on June 8, 2007. *Id.* Claimant had a followup on June 19, 2007 with Sue Wesensten, R.N., C.N.P, and his outpatient course was described as unremarkable.

---

[2]Stenosis is the narrowing of the blood vessel. *Merriam-Webster's Medical Dictionary* (2007).

R. 372.

### 4. Dr. M.R. Alzein - Claimant's Treating Physician

Claimant visited Dr. Alzein from May 27, 2005 to October 5, 2007. R. 390-407. Claimant's first appointment after his alleged disability date, and his first appointment after his surgery, took place on June 22, 2007. R. 398. Dr. Alzein's notes state that Claimant had exertional shortness of breath and no chest pain. *Id.* Claimant visited Dr. Alzein four more times—in July, August, September, and October of 2007. R. 390-99.

On July 6, 2007, Dr. Alzein noted that Claimant had exertional shortness of breath and that he was awaiting the results of an echocardiogram. R. 396. On August 1, 2007, Dr. Alzein noted that Claimant had exertional shortness of breath and sleep apnea for which he prescribed a CPAP. R. 394, 392. On September 11, 2007, Dr. Alzein noted that Claimant had occasional shortness of breath and that the echocardiogram showed left ventricular hypertrophy and right sided weakness. R. 392. Dr. Alzein also emphasized the importance of using the CPAP machine for Claimant's sleep apnea. *Id.* Finally, on October 5, 2007, Dr. Alzein wrote that Claimant had persistent shortness of breath. R. 390. On that date, he opined "the patient [is] disabled for 1 year, then he is going to be reevaluated." *Id.* Dr. Alzein submitted a letter dated September 19, 2007, stating that Claimant was disabled on May 5, 2007, had not returned to work, and that "his diagnosis is heart disease, fatigue and shortness of breath." R. 379.

### 5. Dr. Lorraine Bangayan - Oak Forest Hospital

Claimant went to Oak Forest Hospital in May, October, and December 2008 to refill

prescriptions. R. 422, 434, 441. On July 7, 2009 cardiologist Dr. Bangayan noted that Claimant had not had recurrent anginal chest pain since his surgery in 2007. R. 413. Claimant reported an increase in shortness of breath after talking, walking half a block, and climbing a flight of stairs. *Id.* Claimant also said he stopped smoking, gained 40 pounds since his surgery, and had jitteriness and non-anginal chest pain that improved when he stopped taking Plavix and Lipitor. *Id.*

Claimant continued to visit the hospital in 2009 for medication refills. R. 461-64. He reported no pain at his checkups on August 18, 2009, and November 25, 2009. R. 461, 463. On September 30, 2009, Claimant underwent an echocardiogram. R. 418. The test showed normal left ventricle size with mild enlargement; hyperdynamic left ventricular systolic function with estimated ejection fraction of 70%, without regional wall abnormalities; mild left atrial enlargement; trivial tricuspid regurgitation; and mild pulmonic regurgitation. *Id.* Claimant's last visit to the hospital in the record is a visit to the Oak Forest emergency room on November 4, 2009. R. 425-26. Claimant complained of dizziness while walking and cleaning a car. R. 425. He was advised to avoid those activities that cause him dizziness. R. 426.

### 6. Dr. Charles Kenney & Dr. Frank Jiminez - State Agency Physicians

Dr. Kenney, a state agency physician, completed a physical residual functional capacity assessment on September 29, 2007. R. 380. Dr. Kenney opined that Claimant had the capacity to lift twenty pounds occasionally, ten pounds frequently, push and pull without limitation, stand for six hours of an eight hour work day, and sit for six hours of an eight hour work day. R. 381. He also opined that Claimant could occasionally climb stairs but not ropes, ladders, or scaffolds. R. 382. Dr. Kenney stated that Claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. R. 384. Dr. Kenney noted that Claimant's condition was stable, he had no chest pain, his lungs were clear, his heart sounds were normal, and he had only some occasional shortness of breath. R. 387. Dr. Jiminez affirmed Dr. Kenney's residual functional capacity assessment as written, while specifically considering Claimant's sleep apnea. R. 409, 410.

### D. The ALJ's Decision - April 23, 2010

Following a hearing and a review of the medical evidence, the ALJ rendered an unfavorable decision upholding the denial of Claimant's application for DIB. R. 10-25. The ALJ evaluated Claimant's application under the required five-step analysis. R. 12-21. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since May 7, 2007, the alleged onset date. R. 12. At step two, the ALJ determined Claimant had the severe impairments of coronary artery disease status post bypass graft, hypertension, sleep apnea, and obesity. *Id.* At step three, the ALJ found Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments

in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. 13-14. The ALJ then considered Claimant's residual functioning capacity ("RFC")[3] and found Claimant capable of performing sedentary work with the additional limitations of no climbing, no exposure to heights or hazards, and avoidance of concentrated exposure to respiratory irritants. R. 14-19.

In assessing Claimant's RFC, the ALJ considered all of his symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence." R. 15. The ALJ found Claimant's impairments could reasonably be expected to produce his symptoms, but that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible." R. 16. In rejecting the Claimant's allegations of disabling limitations, the ALJ considered "the objective medical evidence, the medical opinions of record, the claimant's treatment history, his use of medications and any side effects from those medications, his work history, his activities, and his admissions." R. 19. The ALJ noted that Claimant stated at the hearing that he could work a sedentary job, though when questioned by his lawyer he minimized his abilities. *Id.*

The ALJ concluded that Dr. Alzein's opinions that Claimant was disabled had no explanation and were "not supported by objective medical findings or the doctor's clinical findings." R. 17. The ALJ stated that Dr. Alzein's opinions "are conclusory, unsupported,

---

[3]A RFC assessment is the most that a person can do despite their physical and mental limitations. The Social Security Administration assesses a person's RFC based on all of the relevant evidence in his or her case record. 20 C.F.R. § 404.1545(a).

and refer to the ultimate issues reserved to the Commissioner." R. 18. The ALJ therefore gave Dr. Alzein's opinions little weight. R. 19.

Rather, the ALJ gave great weight to the state agency physicians. R. 18. Dr. Kenney opined—and Dr. Jiminez affirmed—that Claimant was capable of light work with no climbing of ladders, occasional climbing of ramps and stairs, and no concentrated exposure to pulmonary irritants. *Id.* The ALJ found that these opinions were "not inconsistent with the medical evidence as a whole." *Id.* While providing great weight to these opinions, the ALJ provided the additional limitation of sedentary work with no climbing and no work at heights or near machinery. *Id.* The ALJ based this conclusion on Claimant's subjective assessments, the combination of Claimant's impairments which include heart disease and obesity, and the objective medical evidence. R. 18-19.

At step four, the ALJ found Claimant unable to perform any past relevant work. R. 19. At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Claimant could perform. R. 20-21. Thus, the ALJ concluded Claimant was not disabled under the Social Security Act. R. 21.

## II. LEGAL STANDARDS

### A.     Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commission's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). A "mere scintilla" of evidence is not enough. *Id.*; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it must be remanded. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). It may not, however, "displace the ALJ's

judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Id.*

## B.    Disability Standard

Disability insurance benefits are available to a claimant who can establish he is under a "disability" as defined by the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past

relevant work due to physical limitations, the ALJ must determine whether other jobs exist in the economy that the claimant can perform. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

## III. DISCUSSION

### A.    The ALJ's Decision is Supported by Substantial Evidence

The ALJ issued a detailed and comprehensive decision that is supported by substantial evidence. She considered the medical records, opinion evidence, and Claimant's subjective assessment to determine that Claimant could work, including the state agency physicians' opinions that Claimant could perform light work. Recent medical records indicated Claimant had no recurrent chest angina and a recent echocardiogram showed minimal abnormalities. R. 446-56. Claimant testified that he could work if the job was mostly sitting down and involved lifting less than ten pounds. R. 51. The ALJ gave Claimant's subjective assessments the benefit of the doubt and limited him to sedentary work.

Claimant nevertheless argues the ALJ committed several reversible errors, and he raises the following issues in support of his motion: (1) whether the ALJ sufficiently considered the opinions of Claimant's treating physician; (2) whether the ALJ properly evaluated Claimant's credibility; and (3) whether the ALJ properly assessed Claimant's residual functional capacity. The Court addresses each in turn.

### A.    The ALJ Properly Evaluated the Opinions of Dr. Alzein, Claimant's Treating Physician.

A treating physician's opinion regarding the nature and severity of a medical

condition is entitled to controlling weight if it is (1) well-supported by medical findings and (2) consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). An ALJ must "minimally articulate" her reasons for discounting a treating source's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). This standard is "a very deferential standard that we have, in fact, deemed 'lax.'" *Id.* (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). Once well-supported contradictory evidence is introduced, the treating physician's opinion is no longer controlling but remains a piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

Dr. Alzein submitted a letter on September 19, 2007, in which he opined that Claimant "was disabled on 5-7-2007. He has not returned to work." R. 379. Dr. Alzein's treatment notes from October 5, 2007, state "I have the patient as disabled for 1 year." R. 390. The ALJ correctly explained that whether Claimant is "disabled" is an administrative finding reserved for the Commissioner rather than a medical opinion. 20 C.F.R. § 404.1527(e)(1); *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). The ALJ properly concluded that Dr. Alzein's opinion that Claimant is disabled is not entitled to controlling weight. *See, Denton*, 596 F.3d at 424.

Claimant argues that the remainder of Dr. Alzein's letter and notes provide a medical opinion that goes beyond his disability determination. Specifically, Claimant argues Dr. Alzein appropriately opined that Claimant's conditions prevent him from working for a year and stated his diagnoses. The ALJ, after determining that Dr. Alzein's opinion was not entitled to controlling weight, gave his opinion "little weight" because "no explanations are

given . . . [the opinions] are not supported by medical findings or the doctor's clinical findings," they are "conclusory," and "the Disability Determination Services assessments constitute more persuasive, contradictory opinion evidence." R. 18.

Claimant argues that the ALJ did not sufficiently evaluate Dr. Alzein's medical opinion under 20 C.F.R. § 404.1527(d)(2); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). The relevant factors are: the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and supportability of the physician's opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2011). As an initial matter, the factors contained in the regulations only apply to *medical* opinions. *See* 20 C.F.R. § 404.1527(e). An opinion that a claimant is "disabled" or "unable to work" is explicitly excluded from the definition of medical opinion and the ALJ was not required to apply the factors when reviewing Dr. Alzein's opinion that Claimant was disabled. *Id.*

The ALJ properly weighed Dr. Alzein's medical opinion, to the extent that it exists beyond the "disability" determination. The ALJ's decision to give this opinion "little weight" is supported by the record and sufficiently articulated. Dr. Alzein provided no support for his opinion that Claimant could not work. R. 18, 379, 390. None of Dr. Alzein's charts indicate how Claimant's symptoms or illnesses render him completely disabled. R. 379, 390-99.

Unlike in *Larson* and *Campbell* where the court found that several additional factors supported the treating doctor, similar facts are not present here. *See Campbell*, 627 F.3d at

308; *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Dr. Alzein is not a specialist and he saw Claimant only nine times over almost two and a half years. R. 390-407. The ALJ reviewed the internal inconsistency between Dr. Alzein's conclusion that Claimant is unable to work and his underlying treatment notes, as well as inconsistency with the record as a whole. R. 18, 19.

Claimant argues that if the ALJ was unclear as to why Dr. Alzein believed Claimant was disabled, she should have contacted Dr. Alzein for clarification. See *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). While that is an option for the ALJ, it is only required when the medical support for a disability decision is not readily discernable. *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Here, there was medical support for a disability decision, albeit one that was in conflict with Dr. Alzein's opinion. ALJs are free to determine that a particular doctor did not provide support for his opinion without searching that doctor out for clarification. *Id.* The record contains substantial medical support for the ALJ's decision to afford Dr. Alzein's opinion little weight.

The ALJ favored the state agency physicians' opinions over Dr. Alzein's. Dr. Kenney opined that Claimant is capable of light work. R. 18. Dr. Jiminez affirmed Dr. Kenney's opinion. R. 18. The ALJ is permitted to give greater weight to non-treating physicians than she gives to the treating physician. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). The proper weight depends on the circumstances. *Id.* Here, unlike Dr. Alzein, the state agency physicians gave explanations for their opinions. R. 378-87, 408-10. The ALJ found that their opinions were consistent with the medical evidence as a whole, which included

subsequent clinical findings of no recurrent angina or chest pain.   R. 18.   These countervailing opinions further support the ALJ's decision to give Dr. Alzein's opinions little weight.  The ALJ's decision to afford Dr. Alzein's opinion "little weight" is supported by substantial evidence.

**B.      The ALJ's Credibility Finding Is Not Patently Wrong.**

When faced with a claimant alleging subjective symptoms, such as pain, an ALJ evaluates the credibility of the claimant's testimony. SSR 96-7p, 1996 SSR LEXIS 4 (July 2, 1996).   The ALJ must consider the testimony in light of the entire record and be "sufficiently specific" as to the reasons for her credibility determination.  *Id.*  Since the ALJ is in the best position to observe witnesses, however, her credibility finding will not be overturned as long as it has some support in the record.  *Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001).   Courts are to give an ALJ's credibility determination a commonsensical reading, rather than "nitpick." *Castile v. Astrue*, 617 F.3d 923, 919 (7th Cir. 2010).  The determination will be reversed only if it was "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

An ALJ can discount a claimant's testimony on the basis of other evidence in the case, particularly because "[a]pplicants for disability benefits have an incentive to exaggerate their symptoms." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).  Additionally, a lack of medical testimony in the record supporting a claimant's subjective complaints may be probative of a claimant's credibility.  *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

The Court cannot find that the ALJ's credibility finding was patently wrong.

Consistent with SSR 96-7, the ALJ addressed Claimant's testimony, daily activities, medical evidence, treatment history, medication, and work history and did not find his allegations of disabling limitations to be credible. R. 19. The ALJ noted that "while [Claimant] complained of shortness of breath, weakness, and fatigue at the hearing, minimal complaints and abnormalities are documented in recent treatment records." *Id.* Claimant testified that he could perform a job where he would mainly sit down and lift no more than 10 pounds—the approximate equivalent of a sedentary job. *Id.* Claimant did not identify any side effects from his medication, and had improvement in his sleep after he began treating his sleep apnea. *Id.*

The ALJ provided reasonable limitations based on Claimant's impairments. *Id.* She limited Claimant to sedentary work due to his shortness of breath and fatigue. *Id.* Contrary to Claimant's assertion, the ALJ did not "turn the credibility process on its head" by accommodating some of Claimant's alleged impairments while finding him not credible. The ALJ is not under any obligation to accept Claimant's statement wholesale. *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). After evaluating Claimant's disability claims in conjunction with the rest of the evidence, the ALJ found that the severity of Claimant's impairments did not rise to the alleged level of disability.

Claimant protests the ALJ's use of "boilerplate" language. The potentially offending sentence explains that Claimant's impairments could cause the alleged symptoms but that the symptoms are not credible to the extent they conflict with the residual functional capacity. R. 16. Unlike the ALJ in the case Claimant cites, *Brindisi on Behalf of Brindisi v. Barnhart*,

315 F.3d 783 (7th Cir. 2003), the ALJ in this case elaborated after making boilerplate statements.   The ALJ goes on to reason, in part, that because recent medical records show that the Claimant has done well, she finds that the Claimant's allegations of disabling limitations are not credible.   R. 19.   Boilerplate language taken in isolation may not be permissible, but in this case it is given context by a reasoned analysis.   In light of the above, Claimant has not shown that the ALJ's credibility finding was patently wrong.

## C.      The ALJ Properly Assessed Claimant's Residual Functional Capacity.

An ALJ makes a residual functional capacity determination by weighing all the relevant evidence in the record.  20 C.F.R. § 404.1545(a)(1); SSR 96-8p.  Claimant argues that the ALJ's finding of a "sedentary" RFC was erroneous because she: (1) lacked a reasonable basis for a finding of sedentary work, (2) inadequately addressed how Claimant's fatigue, shortness of breath, and dizziness would allow him to sustain competitive employment; and (3) failed to properly consider Claimant's obesity.

Claimant argues that the ALJ reached an improper independent medical conclusion when she concluded that Claimant is capable of sedentary work.  The state agency doctors concluded that Claimant could perform light work with certain limitations and Claimant claimed he could not work at all.  R. 18.  The ALJ found that Claimant could perform sedentary work, which is between light work and no work.  R. 14.  Claimant characterizes this as an independent medical conclusion and cites to *Suide v. Astrue*, 371 F.Appx 684 (7th Cir. 2010), as support.  Unlike the ALJ in *Suide*, the ALJ here did not create an "evidentiary deficit."   In *Suide*, the ALJ rejected a treating doctor's opinion and then made an RFC

21

determination without considering any other medical evidence. *Id.* at 690. By contrast, in the case at bar, there is medical support for Claimant succeeding at a sedentary job. R. 18. The ALJ here accepted alternate medical evidence and incorporated several additional limitations to give Claimant's subjective assessments the benefit of the doubt, ultimately arriving at an RFC that is supported by substantial evidence.

Claimant argues that his fatigue, shortness of breath, and dizziness will prevent him from working on a continual basis and therefore he will not be able to keep a job. The ALJ based her finding that Claimant was capable of working on her RFC determination and the VE's testimony. R. 20. The VE testified that an individual with the Claimant's age, education, work experience, and RFC could perform any number of jobs. R. 20. The ALJ's RFC determination was based on the entire record, including her credibility finding. R. 19. She found that Claimant's assertions that he cannot walk without assistance, cannot sit for more than two hours, and needs to take one to two hour naps daily were not supported by the medical evidence and therefore not credible. *Id.* The Court has upheld the ALJ's credibility finding and the ALJ's RFC and hypotheticals sufficienlty incorporated all of the appropriate limitations.

Finally, contrary to Claimant's argument, the ALJ properly considered Claimant's obesity in conjunction with his other impairments. First, the ALJ explicitly listed obesity as a severe impairment, along with coronary artery disease, hypertension, and sleep apnea. R. 12. The ALJ meaningfully considered Claimant's obesity individually and in combination with other impairments in step three. R. 14. The ALJ noted that at the time of the hearing,

Claimant weighed 274 pounds which translates to a BMI of 38.2 when using Claimant's height of 5'11".  R. 14.  The ALJ concluded that there is "no evidence in the record that the claimant's moderate obesity has resulted in any functional limitations . . . which raise[] it to being medically equivalent to a listed impairment."  R. 14.  Claimant's weight gain was also noted as a possible cause for his shortness of breath.  R. 17.  Finally, the ALJ considered Claimant's weight when setting his RFC as sedentary work with no climbing.  R. 18, 19.  Throughout her opinion, the ALJ considered obesity both as an individual impairment and in combination with other impairments.  On all counts, the ALJ's RFC assessment is supported by substantial evidence and sufficiently articulated.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court denies Claimant's motion for summary judgment and grants the Commissioner's motion to affirm the Commissioner's decision.

**SO ORDERED THIS 31st DAY of OCTOBER, 2011.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**


**Copies mailed to:**

Barry A. Schultz
James Schiff
Law Offices of Barry Shultz
1601 Sherman Avenue, Suite 510
Evanston, IL 60201

**Counsel for Plaintiff**

Kathryn Ann Kelly
United States Attorney's Office
219 South Dearborn Street, Suite 500
Chicago, IL 60604

Rachel Steiner
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, Suite 3000
Chicago, IL 60606

**Counsel for Defendant**